**JEFFREY J. PROSSER, Appellant**

**v.**

**MARGARET S. PROSSER, Appellee**

D.C. Civ. App. No. 1995-095

D.C. Civ. App. No. 1996-029

T.C. Fam. No. D210-1989

District Court of the Virgin Islands

Div. of St. Croix

November 4, 1998

Kevin A. Rames, Esq., Christiansted, St. Croix U.S.V.I. *for Appellant*

MOORE, *Chief Judge*, FINCH and SWAN, *Judges*

## OPINION OF THE COURT

PER CURIAM

This matter is again before the Court, this time for determination whether monetary sanctions against appellant and his counsel are warranted for filing and pursuing this meritless appeal.

## I. FACTS AND PRIOR PROCEEDINGS

In 1989, appellant Jeffrey Prosser initiated this action for divorce in the Territorial Court of the Virgin Islands. In February 1990, appellant and appellee, his then wife, Margaret Prosser, negotiated a property settlement, which was reduced to writing and approved by the Court. In March 1990, the Court entered a final decree of divorce into which the written property settlement agreement was merged. Pursuant to the terms of this agreement, appellant was to pay his former wife $8,000 per month, $500,000 on February 14, 1992, and a final payment of $2,500,000 on or before February 14, 1995. Appellant made the monthly payments and the interim payment of $500,000 in 1992 without objection. He never challenged the validity of the property settlement agreement or its merger by the court into the divorce decree until after the final payment came due.

When the final payment of $2,500,000 was due in February of 1995, however, appellant refused to pay it.[1] The following month, appellee successfully moved the Territorial Court for a writ of execution on the judicially ordered settlement agreement to collect the balance owed. Appellant then filed a motion in the trial court to vacate the writ of execution, arguing for the first time that the court lacked subject matter jurisdiction. The Territorial Court denied appellant's motion on July 6, 1995 ["July 6th Order"], and appellant's appeal to this Court followed.

At the same time he appealed the July 6th Order, appellant moved the lower court for a stay of execution and setting of a supersedeas bond. On July 27, 1995, the Territorial Court granted the stay, conditioned on the posting of a cash bond in the amount of $1,000,000, plus a $1,622,809.09 property bond ["July 27th Order". Appellant posted a surety bond rather than a cash bond and, instead of a property bond, filed his personal check payable to the Territorial Court, attaching photocopies of some stock certificates which he promised to retain unencumbered and deliver upon further order. Finding that the conditions of the July 27th Order had not been satisfied, the Territorial Court vacated its stay on

---

[1]The reason given for this refusal was that an expected public offering of stock held by appellant had not materialized so he was unable to pay the lump sum. (Appendix of Appellant at 13.)

August 24, 1995 ["August 24th Order"]. Appellant sought review in this Court and we stayed matters pending clarification from the trial court on how the conditions of the supersedeas bond had not been met. Upon its explanation that appellant's $1,000,000 surety bond was not the "cash" bond which had been required, we lifted our stay and upheld the Territorial Court's August 24th Order vacating the stay of execution on appellee's judgment. *Prosser v. Prosser*, 33 V.I. 115, 907 F. Supp. 906 (D.V.I. App. Div. 1995).

Appellant then filed an emergency motion for stay in this Court, which was granted on December 21, 1995, contingent upon his posting of a $3,000,000 supersedeas cash bond no later than January 2, 1996. Appellant failed to post such bond, although he did move the lower court to release the original stock certificates which he previously had delivered to the Registry of the Territorial Court. The trial judge denied the motion on February 6, 1996, observing that the original certificates had been properly seized by the marshal pursuant to a valid writ of execution before this Court entered its stay on December 21, 1995.

Choosing to continue to waste this Territory's limited and valuable judicial resources, Mr. Prosser filed a separate petition on February 8, 1996, D.C. Civ. App. No. 1996-029, asking us to issue a writ of mandamus directing the Clerk of the Territorial Court to release appellant's stock certificates. We denied the petition for writ of mandamus because relief was available through an ordinary appeal, and admonished appellant's counsel for not disclosing that the Territorial Court already had denied the motion for release, thus giving this Court the false impression that the judge had not acted on appellant's motion. *Prosser v. Prosser*, 34 V.I. 139, 151, n.12, 921 F. Supp. 1428, 1435, n.12 (D.V.I. App. Div. 1996).

On April 19, 1996, we rejected Mr. Prosser's appeal, finding it to be "so utterly lacking in merit that its purpose appears to be only to delay compliance with the divorce court's March 1990 Order." *Id.* at 148, 921 F. Supp. at 1434. We then considered Mrs. Prosser's motion for sanctions premised on the appellant's violation of the rules requiring the parties to cooperate in putting together various filings required to perfect the appeal. We *sua sponte* added the frivolity of the appeal to appellee's allegations and put both Mr. Prosser and his counsel, Attorney Kevin Rames, on notice that we

were considering imposing monetary sanctions under Rule 38 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1927. *Prosser*, 34 V.I. at 148-49, 921 F. Supp. at 1434.[2] The Court afforded appellant and his counsel the opportunity to submit memoranda regarding the appropriateness of such penalties, as required by Rule 38 and due process.

Appellant and his counsel have subsequently submitted separate memoranda opposing sanctions. After the panel's opinion affirming the Territorial Court was issued, the parties negotiated a settlement agreement. Pursuant to the terms of this agreement, appellant agreed to pay the outstanding $2,500,000, interest at 11%, and $210,000 in attorneys' fees and costs. In exchange, appellee agreed to "take no position on the issue of sanctions against Jeffrey J. Prosser and Kevin A. Rames . . . and will continue to take no position assuming all payments are made as set forth in the Schedule." (Settlement Agreement ¶ 9c.) Appellee's additional costs and attorneys' fees incurred in defending against this frivolous appeal thus have been fully satisfied, and appellee has filed no response to the memoranda filed by appellant and his attorney.

After careful consideration of the memoranda, we find that neither Mr. Prosser nor Attorney Rames have been able to justify filing this frivolous appeal and that monetary sanctions against both are in order.

## II. DISCUSSION

■ Pursuant to Rule 38,

[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

---

[2] Sanctions under 28 U.S.C. § 1912 would also be appropriate. See 28 U.S.C. § 1912 (permitting the reviewing court, in its discretion, to adjudge to the prevailing party damages in circumstances where the appeal is taken for purposes of delay).

FED. R. APP. P. 38.[3] As the Supreme Court has noted, "Rule 38 adopts a case-by-case approach to identifying and deterring frivolous appeals." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 8, 94 L. Ed. 2d 1, 107 S. Ct. 967 (1987); *see also WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1088 (6th Cir. 1983) ("Frivolity, like obscenity, is often difficult to define."). "Typically the courts have looked for some indication of the appellant's bad faith suggesting that the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for the purpose of delay or harassment or out of sheer obstinacy." *Ruderer v. Fines*, 614 F.2d 1128, 1132 (7th Cir. 1980). Indeed, Rule 38 damages as a sanction can be assessed even absent proof of bad faith. *See Nagle v. Alspach*, 8 F.3d 141, 145 (3d Cir. 1993) ("[The Rule 38] inquiry is an objective one, focusing 'on the merits of the appeal regardless of good or bad faith.'" (quoting *Hilmon Co. (V.I.) Inc. v. Hyatt Int'l*, 899 F.2d 250, 253 (3d Cir. 1990))); *Coghlan v. Starkey*, 852 F.2d 806, 813 (5th Cir. 1988) ("Bad faith may aggravate the circumstances justifying sanctions . . . ."); *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1202 (7th Cir. 1987) (same). Even the "presence of non-frivolous arguments will not save one who files an otherwise meritless appeal from payment of Rule 38 damages." *Nagle*, 8 F.3d at 145 (citing *In re Perry*, 918 F.2d 931, 934-35 (Fed. Cir. 1990)).

■ Section 1927 of Title 28 of the United States Code provides:

Any attorney or other person admitted to conduct cases in any court of . . . any Territory . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the

---

[3] When this case was appealed, the Appellate Division had not yet promulgated its own appellate rules, and the Federal Rules of Appellate Procedure and the Local Rules of Appellate Procedure of the United States Court of Appeals for the Third Circuit applied. See LRCi. 76.1 (1993) ("Practice in the Appellate Division of the District Court of the Virgin Islands of the United States . . . shall be governed by the Federal Rules of Appellate Procedure [and] the Rules of the United States Court of Appeals for the Third Circuit."). This appeal is still governed by the federal rules as interpreted by United States Courts of Appeals, even though they are being applied in the context of purely local, Virgin Islands substantive law. *See Monsanto-Swan v. Government of the Virgin Islands*, 33 V.I. 138, 918 F. Supp. 872 (D.V.I. App. Div. 1996); *Hess Oil Virgin Islands Corp. v. Richardson*, 32 V.I. 336, 894 F. Supp. 211 (D.V.I. App. Div. 1995) (as amended). The Virgin Islands Rules of Appellate Procedure went into effect on August 1, 1998, and the equivalent to FED. R. APP. P. 38 can be found in V.I. R. App. P. 30(a).

excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Appellant's counsel recognized in his response that a sanction under 28 U.S.C. § 1927 requires a finding of bad faith. *See, e.g., Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985) ("We do not read the language of section 1927, which explicitly requires 'unreasonable' conduct before attorneys' fees may be taxed, to impose such a burden absent actions taken which are tantamount to willful bad faith.").[4] For example, a demonstrated strategy that an appeal was pursued for purposes of delay or harassment of an opponent would support a finding of bad faith. *See Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (advancement of baseless claim for purpose of harassment or delay indicates bad faith). Ultimately, the sanctioning power conferred upon courts by section 1927 should be exercised "only in instances of a serious and studied disregard for the orderly process of justice." Id. (quotations omitted). This is one of those instances. Because appellee's fees and costs have already been paid under the settlement agreement, the Court will supplement its sanctioning authority under Rule 38 and section 1927 with its inherent power to impose those sanctions in the form of fines payable to the Appellate Division.

We turn to the arguments submitted by appellant and counsel in their efforts to convince this Court that the appeal was meritorious and pursued in good faith. Mr. Prosser first argued that a settlement agreement could not be enforced by writ of execution, relying on advisory language in *Pfister v. Pfister*, 21 V.I. 533, 538-39 (Terr. Ct. 1985). The specific holding of that case was narrow, namely, a separation agreement could not be enforced through a separate lawsuit. While the Territorial Court went on in dicta to suggest two alternate methods, nothing in the language of the opinion expressly forbid enforcement of a property settlement agreement by writ of execution. In any event, whether there may be some

---

[4] *See also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980) (acknowledging the "inherent power" of courts to award attorney's fees against a party and its counsel under bad-faith exception to the American Rule after fair notice and an opportunity to respond).

question about the methods for enforcing a settlement agreement that has been merged into a divorce decree is wholly irrelevant to the merits of this appeal, for appellant did not raise this claim to the Territorial Court.

Appellant's first claim on appeal differed completely from the argument he made below.[5] In presenting to the Appellate Division a claim that was not argued to the trial court or properly preserved, appellant ignored the well-established rule that a party who fails to object to errors below waives the right to complain on appeal. *Accord Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 680 (3d Cir. 1980) (reiterating the settled rule that "a trial court should not be reversed on grounds that were never urged or argued in the court below"). Having failed to raise the issue to the Territorial Court, appellant's effort to raise it for the first time on appeal rendered this first claim frivolous. *Accord Lavender v. State Farm Mut. Auto. Ins. Co.*, 828 F.2d 1517, 1518 (11th Cir. 1987) ("This appeal is frivolous because this issue was never raised in district court."); *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 693 (7th Cir. 1987) (same).

Appellant's second contention was foreclosed by a similar "procedural" bar — res judicata.[6] Appellant argued that the

---

[5] Appellant's contention that the claim made below and that made on appeal are identical could not be further from the truth. Before the Territorial Court, he argued that the divorce decree entered in March 1990 was not a "judgment" enforceable by writ of execution. Appellant pointed first to Federal Rule of Civil Procedure 69 which states that a writ of execution is designed to enforce "judgments" for the payment of money. Second, appellant noted that a judgment is entered "upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied." Fed. R. Civ. P. 58. Alleging that he could find no judgment of record on the docket of the Territorial Court, appellant argued that there was no judgment upon which a writ of execution could properly issue. Appellant utterly abandoned this argument in his appeal. Citing *Pfister*, he instead asserted that even if a judgment had been entered, the terms of a property settlement agreement incorporated in a divorce decree only could be enforced by a contempt proceeding or a breach of contract action, not by writ of execution. Nowhere in appellant's proffers to the lower court was the *Pfister* case mentioned.

[6] While an attorney who files an action later shown to be foreclosed by an affirmative defense, such as statute of limitations, may not be guilty of filing a frivolous claim, *e.g.*, *Ford*, 790 F.2d at 348-49 ("In the real world of litigation, counsel are not expected to be omniscient. No one knows for certain whether a potential affirmative defense will be in fact pled."), continuation of a case after being put on notice that it was filed outside the statute of limitations, for example, would constitute bad faith and support a sanction, *id.* at 350; accord *Landi v. Ticor Title Ins. Co.*, 875 F.2d 318, 1989 WL 54005, at *2 (9th Cir.

247

divorce court lacked jurisdiction to issue the March 1990 Order that appellee sought to enforce. Appellant's interpretation, however, was squarely precluded by a decision of the Court of Appeals for the Third Circuit that one who had failed to comply with the terms of a property settlement agreement was foreclosed by res judicata from questioning the Territorial Court's subject matter jurisdiction years after the court's judgment. *Hodge v. Hodge*, 621 F.2d 590 (3d Cir. 1980).[7] The only possible exception was that the claim would not be barred if the Territorial Court's lack of jurisdiction was so clear that its exercise amounted to a "manifest abuse of authority." *Id.* at 593.

When the decree was entered in March 1990, the Territorial Court had original jurisdiction "in all civil actions wherein the matter in controversy . . . does not exceed the sum of $200,000; . . . to hear and determine juvenile, divorce, annulment and separation proceedings . . . ." V.I. CODE ANN. tit. 4, § 76(a). Reading the $200,000 limit as also restricting the court's divorce jurisdiction, appellant argued that the trial court's exercise of jurisdiction over a divorce involving more than $200,000 constituted such a manifest abuse of authority.[8] We easily concluded that "it would be virtually impossible for a court to place a monetary value on certain of the actions enumerated in section 76(a)," for example, juvenile, annulment and separation proceedings, and

---

1989) (finding appeal to be frivolous where "the res judicata effect of the dismissal in the First Action made the result of this appeal obvious'); *Corpus Christi Taxpayer's Ass'n v. City of Corpus Christi,* 858 F.2d 973, 977 (5th Cir. 1988) (same). Thus, even if appellant could not have been sure that appellee would assert the affirmative defense of res judicata before the Territorial Court, he nonetheless continued to litigate after he knew it was barred by res judicata and therefore frivolous.

[7] By not addressing it in their memoranda opposing sanctions, appellant and his counsel abandoned their final claim on appeal that the court below violated appellant's due process rights by ruling without the benefit of oral argument. Further, appellant's suggestion that *Hodge* mandates an evidentiary hearing before a case can be dismissed on res judicata grounds is nowhere to be found in the *Hodge* decision.

[8] As early as 1980, the Territorial Court had noted that "§ 76(a) specifically grants the power to 'hear and determine . . . divorce proceedings' . . . without regard to the dollar amount involved." *See Puerto Rican-American Ins. Co. v. Francis,* 17 V.I. 87, 90 n.5 (Terr. Ct. 1980). Appellant's contention was no less frivolous although this statement was not a finding necessary to decide the *Puerto Rican-American Ins.* case, for "[r]ule 38 sanctions . . . may rest on [an argument's] inherent weakness without clear precedent anywhere." 16A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3984.1, at 638 (2d ed. 1996) [WRIGHT & MILLER].

rejected appellant's suggestion that the Territorial Court manifestly abused its authority. *Prosser*, 34 V.I. at 147, 921 F. Supp. at 1432-33.

Clearly, appellant advanced these baseless claims on appeal[9] solely to put off paying his former wife the final $2,500,000, or to harass and coerce her into accepting a lesser amount than he had voluntarily agreed to compensate her.[10] The course of conduct of appellant and his counsel throughout this entire litigation was to thwart the enforcement of the Territorial Court's March 1990 Order. The very decision to file this appeal could only have been to further delay the day of reckoning. Appellant had consented to the terms of a property settlement agreement and had not appealed the Territorial Court's merger of the agreement into the divorce decree. Indeed, appellant had complied with the divorce decree for three years, paying $8,000 per month and $500,000 on February 14, 1992. Then, without denying his obligation to pay his former wife, Mr. Prosser simply refused to make the last payment, contested Mrs. Prosser's efforts to enforce his promise to pay, and filed a frivolous appeal when the lower court allowed the writ of execution to enforce his agreement, thereby wasting this Court's scarce resources. Appellant magnified his delaying tactics and harassment of appellee by refusing to post the supersedeas bond set by the Territorial Court as a condition of staying appellee's writ of execution. Counsel and his client then caused this Court to waste even more time and effort on this frivolous appeal by filing a meritless emergency motion and a frivolous petition for writ of mandamus over the stay and supersedeas bond.

The Court of Appeals for the Third Circuit has sanctioned similar conduct. *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d

---

[9] We have summarily rejected as frivolous appellant's additional contention that the lower court committed a manifest abuse of its authority because it had no jurisdiction to order the transfer of real property, i.e., the *Prossers'* marital abode. *See Dyndul v. Dyndul*, 541 F.2d 132, 134 (3d Cir. 1976); *see also Roberts v. Roberts*, 26 V.I. 92, 94 (Terr. Ct. 1991) (Territorial Court has no statutory authority under 16 V.I.C. § 109 to effectuate distributions of real property.). This argument has nothing to do with the court's subject matter jurisdiction over the payment of money at issue here; only that portion of the decree distributing property would be affected. *See Dyndul*, 541 F.2d at 135 ("The consequence of our holding is that that portion of the [lower] court's decree ordering [plaintiff to quitclaim to her former husband her interest in real property] cannot stand.").

[10] *See* WRIGHT & MILLER § 3984, at 593 ("Delay is frequently a component of a frivolous appeal . . . .").

59 (3d Cir. 1986). Sun Ship, a shipbuilder, entered into a contract with Matson, a vessel operator, in which the parties agreed to arbitrate disputes "arising out of or relating to the Contract." *Id.* at 61. Such a dispute arose, was arbitrated, and decided in favor of Matson. Contending that the arbitrators' decision was void because they had resolved a dispute over which they had no authority, Sun Ship lost in the district court and on appeal. The Court of Appeals rejected Sun Ship's claims as frivolous, affirmed the arbitrator's decision, and assessed Rule 38 sanctions against Sun Ship.

> The present case . . . is one requiring a Rule 38 award. Sun agreed in writing to submit a precise question to the arbitrators. The question was decided adversely. Sun resisted enforcement of the award, and then pursued an appeal contending that the arbitrators acted outside their authority. *Sun has pursued, therefore, an appeal that from the beginning was utterly without merit.*

*Id.* at 64 (emphasis added); *see also Floralife, Inc. v. Floraline Int'l, Inc.,* 807 F.2d 518, 520 (7th Cir. 1986) ("The appeal is frivolous — an effort by [appellant] to renege on a stipulation that it signed with its eyes open . . . and we reiterate this court's unwillingness to allow its processes to be abused by litigants unwilling or unable to evaluate the merits of an appeal."). Mr. Prosser's frivolous appeal warrants Rule 38 sanctions.

Although appellant undoubtedly made the decision not to honor his voluntary obligation under the divorce decree, counsel assisted him by filing suit below and the frivolous appeal to the Appellate Division of the lower court's adverse decision. Counsel therefore is far from blameless.

> Since Rule 38 may result in a damage award against a client, attorneys have an affirmative obligation to research the law and to determine if a claim on appeal is utterly without merit and may be deemed frivolous. . . . If counsel ignore or fail in this obligation to their client, they do so at their peril and may become personally liable to satisfy a Rule 38 award. The test is whether, following a thorough analysis of the record and careful research of the

law, a reasonable attorney would conclude that the appeal
is frivolous.

*Hilmon Co.*, 899 F.2d 250, 254 (3d Cir. 1990) (Rule 38 awards can be assessed against counsel in whole or in part). The burden of damages for this frivolous appeal should not fall solely upon the client, since the merits of a lawsuit or an appeal are areas of expertise "customarily committed to counsel and not to the party." *Id.* Indeed, " '[a]bout half the practice of a decent lawyer consists in telling would-be clients that they are damned fools and should stop.'" *Hill*, 814 F.2d at 1202 (quoting 1 Jessup, Elihu Root 133 (1938)).

Importantly, there is no novel theory which will be chilled or a "claim or defense which has colorable support under existing law or reasonable extensions thereof" which will be deterred by sanctioning both appellant and his counsel. *See Hilmon*, 899 F.2d at 253. We thus are not concerned that the imposition of sanctions here will chill any proper advocacy. Imposition of sanctions on both appellant and his counsel in this case will only serve to deter the future filings of baseless appeals. The obvious plan and strategy of delay and harassment demonstrated by the record in this case justifies a finding of bad faith on the part of both counsel and his client. *See Ford*, 790 F.2d at 347.

With this conclusion, monetary sanctions against both counsel and client under Rule 38 and 28 U.S.C. § 1927 are in order. Rule 38 damages should reflect the egregiousness of the conduct of appellant and counsel and be structured to advance the primary purpose of deterring future frivolous claims. Since appellee's costs and attorneys' fees of $210,000 have been paid in full by appellant under the terms of the settlement agreement between the parties, one purpose of Rule 38 damages, compensation of "appellees who are forced to defend judgments awarded them in the trial court from appeals that are wholly without merit," has already been satisfied. *Nagle*, 8 F.3d at 145. This leaves only compensation to the Court for the harm appellant has caused to the judicial system in satisfaction of another purpose of Rule 38 damages, namely, to "preserve the appellate court calendar for cases worthy of consideration." *Hilmon*, 899 F.2d at 251, *quoted in Nagle*, 8 F.3d at 145; *see*

251

*also* 9 James Wm. Moore, Moore's Federal Practice ¶ 238.02[2] (2d ed. 1995).

We are mindful that the "penalty aspect of the rule serves to vindicate public interests which go beyond compensating the appellee." *Ruderer*, 614 F.2d at 1132. As with most appellate courts, "we labor under a significant burden of litigation which is unnecessarily compounded when frivolous appeals are pursued." *Hilmon*, 899 F.2d at 253. Thus, the preservation of this Court's appellate calendar for worthy cases will be furthered by imposing damages against counsel and client in the form of fines payable to the Clerk of the Appellate Division.

To the extent our authority under Rule 38 and section 1927 needs supplementation, we rely upon our inherent power to sanction the conduct exhibited here. In another instance where section 1927 was not broad enough to reach conduct which degraded the judicial system because it only applied to attorneys and not litigants, the Supreme Court observed that inherent powers are governed by the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991). Since inherent powers are so potent, they must be exercised with restraint and discretion, "[a] primary aspect of [which] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 45. While not well defined, "courts under their inherent powers have developed a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results." *Eash v. Riggins Trucking Inc.* 757 F.2d 557, 564 (3d Cir. 1985) (en banc).

■ One of these inherent powers is "the power to fine." *In Re Tutu Wells Contamination Litig.*, 37 V.I. 398, 120 F.3d 368, 383 (3d Cir. 1997).[11] This Court will invoke this power to fine in the case at bar

---

[11] *See also Government Guarantee Fund of the Republic of Finland v. Hyatt Corp.*, 38 V.I. 431, 5 F. Supp. 2d 324, 1998 WL 494681, at *4 (D.V.I. Aug. 6, 1998) (recognizing the ability of the Court to impose monetary fines pursuant to its inherent powers); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 914 F. Supp. 1172, 1179 (E.D. Pa.1996) (Court has the power to impose monetary fines "to compensate the court . . . for the added expenses caused by discovery abuses."); *see also Griffith v. Hess Oil Virgin Islands Corp.*, 38 V.I. 460, 5 F. Supp. 2d 336, 340 (D.V.I. 1998) (enumerating permissible sanctions).

where pursuit of this groundless appeal has diverted the resources of this Court from more serious claims. *Accord Laitram Corp. v. Cambridge Wire Cloth Co.*, 919 F.2d 1579, 1583-84 (Fed. Cir. 1990) (since 28 U.S.C. § 1927 only allows payment of costs and attorney's fees to the other side, court used inherent power to discourage unreasonable and vexatious conduct of counsel for both sides who signed briefs, requiring both counsel to pay $1,000 into the Treasury of the United States).

Even though the Court's inherent powers were not mentioned as a basis for sanctions, our opinion giving appellant and his counsel notice and opportunity to be heard nevertheless advised them of exactly which conduct was alleged to be sanctionable. There was no necessity that they be put on notice to defend against a charge of bad faith, since bad faith is not a prerequisite for the award of attorneys' fees and costs in the Territorial Court or the Appellate Division. In the courts of the Virgin Islands, including the Appellate Division of the District Court of the Virgin Islands, the American Rule against shifting fees to the losing party does not apply.[12] Rather, "there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto." 5 V.I.C. § 541(b) (this does not apply in

---

[12] Under the American Rule, attorney's fees ordinarily may not be shifted to a losing party unless, for example, the losing party exhibited "bad faith." Since this was the context in which the Supreme Court construed a federal court's inherent power, a finding of bad faith was a requirement for using fee-shifting as an inherent power sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 50, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991). Even in the strictly federal context, however, the United States Court of Appeals for the Third Circuit has recognized that a finding of bad faith conduct is not a prerequisite for the exercise of a federal court's inherent power to sanction, but depends upon the nature and severity of the sanction contemplated. *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1995).

[T]he fact that fee-shifting as a sanction requires a finding of bad faith "in no way means that all sanctions imposed under the courts' inherent authority require a finding of bad faith." Thus, a court need not always find bad faith before sanctioning under its inherent powers: "since necessity does not depend upon a litigant's state of mind, the inherent sanctioning power must extend to situations involving less than bad faith."

*Id.* at 74 n.11 (quoting *Chambers*, 501 U.S. at 59 (Scalia, J. dissenting)).

personal injury cases unless the court finds that the complaint filed or the defense raised was frivolous).[13]

Moreover, even if appellant and his attorney were entitled to notice that they needed to defend the good faith of their conduct, they received sufficient notice for purposes of the supplemental invocation of the Court's inherent power, since bad faith is an element of section 1927 and is implicated by, although not strictly an element of, a Rule 38 sanction.[14] *See Nagle*, 8 F.3d at 145. Moreover, both appellant and counsel in fact defended themselves against having acted in bad faith. Counsel adopted the arguments he made on his client's behalf in his Memorandum of Law in Opposition to Sanctions Under Rule 38 of the Federal Rules of Appellate Procedure, "which outlines, with specificity, the reasons why the conduct of Mr. Prosser and of his counsel in this case obviates any showing of bad faith." (Memorandum in Opp'n to Sanctions Under Title 28 U.S.C. § 1927 at 3.)

■   To this end, we will impose a fine in the amount of $25,000, $20,000 to be paid by appellant and $5,000 to be paid by his counsel. *See Grimes v. Commissioner*, 806 F.2d 1451, 1454 (9th Cir. 1986) (awarding a lump sum in lieu of fees). This award is wholly commensurate with the harm to the judicial system from this frivolous appeal filed to delay compliance with a divorce and property settlement which appellant had voluntarily negotiated and to harass appellee, especially when the additional machinations with the stay and supersedeas bond are added to the calculation. Although it represents just one percent of the final payment appellant was seeking to evade paying and only ten percent of the fees and costs appellee was forced to incur, we have concluded that the $25,000 fine — $20,000 from appellant and $5,000 from counsel — will be sufficient to deter a repeat of this misuse of judicial processes. Since appellant did not act alone,

---

[13] The statute also provides a definition of frivolous: "(i) without legal or factual merit; or (ii) for the purpose of causing unnecessary delay; or (iii) for the purpose of harassing an opposing party." 5 V.I.C. § 541(c).

[14] *See Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224-27 (3d Cir. 1995) (notice of Rule 11 sanction, which does not require showing of bad faith, plus knowledge that defense against charge of bad faith would be required, was sufficient notice for award of attorney's fees under bad-faith exception to American Rule against fee shifting under federal court's inherent power).

counsel has likewise been penalized. Counsel bore an obligation to recognize that the claims pursued here lacked merit and to advise his client accordingly; in short, "as a trained lawyer, [he] should have known better." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 504 (3d Cir. 1991). His failure to do so renders him personally liable to satisfy a portion of this fine. *See Hilmon*, 899 F.2d at 254.

## CONCLUSION

It is evident to the Court, and should likewise have been evident to counsel and his client, that this appeal had no possibility of success. For the reasons stated above, the Court will impose a fine in the total amount of $25,000. A judgment so stating will be entered.

ENTERED this 4th day of November, 1998.

## ORDER

After careful consideration of the record and the arguments of appellant and his counsel, and for the reasons set forth in the accompanying opinion of even date, it is hereby

ORDERED that damages in the amount of $25,000 payable to the Clerk of the Appellate Division of the District Court of the Virgin Islands are imposed as a sanction, $20,000 to be paid by appellant, Jeffrey J. Prosser, and $5,000 to be paid by his counsel, Kevin A. Rames, Esquire. It is further

ORDERED that these damages shall be paid no later than twenty days from the date of this Order.

ENTERED this 4th of November, 1998.