740 F.2d 271
 1984-1985 O.S.H.D. ( 27,010
 CONSOLIDATION COAL COMPANY, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, Respondent,
and
Raymond J. Donovan, Secretary of Labor, Respondent,
United Mine Workers of America, Intervenor.
 No. 83-3463.
 United States Court of Appeals,
Third Circuit.
 Argued June 11, 1984.
Decided Aug. 13, 1984.
 
 Ronald S. Cusano (argued), Anthony J. Polito, Corcoran, Hardesty, Ewart, Whyte & Polito, P.C., Robert M. Vukas, Pittsburgh, Pa., for petitioner.
 
 
 1
 Anna L. Wolgast (argued), Francis X. Lilly, Deputy Sol. of Labor, Cynthia L. Attwood, Associate Sol., Michael M. McCord, U.S. Dept. of Labor, Arlington, Va., for respondent Secretary of Labor.
 
 
 2
 Mary Lu Jordan (argued), Michael H. Holland, Washington, D.C., for intervenor, United Mine Workers.
 
 
 3
 Before WEIS and BECKER, Circuit Judges, and OLIVER, District Judge.*
 
 OPINION OF THE COURT
 
 4
 WEIS, Circuit Judge.
 
 
 5
 In this appeal, the owner of a coal mine contests its obligation to pay a miner's representative for his time spent in accompanying a federal official on a spot inspection. We conclude that the statutory entitlement to "walkaround pay" applies to both regular and spot inspections. Accordingly, we will deny the owner's petition for review of a penalty for failure to compensate a miner representative.
 
 
 6
 In March 1982, a federal mine inspector conducted a spot inspection at Consolidation Coal's Westland No. 2 Mine, an underground bituminous coal facility in Washington, Pennsylvania. Miner representative L. Zuzik accompanied the inspector on his tour of the mine. After having learned that the company failed to pay Mr. Zuzik for the time spent on the inspection, another inspector from the Mine Safety and Health Administration issued a citation for a violation of subsection 103(f) of the Federal Mine Safety & Health Act of 1977, 30 U.S.C. Sec. 801 et seq. (1982).
 
 
 7
 The parties submitted the matter to an ALJ on stipulated facts. He entered a decision against the company, directing payment to Mr. Zuzik and assessing a penalty of $100, an increase of the $48 penalty sought by the Administration. The Federal Mine Safety & Health Review Commission declined to exercise its review function, and the order became final.
 
 
 8
 On petition to this court, the company contends that the Act's allowance of compensation to the miner representative applies to only "regular" and not "spot" inspections. The company also contests the increase in the penalty beyond the amount sought by the Secretary. The Secretary of Labor argues that in United Mine Workers of America v. Federal Mine Safety & Health Review Commission, 671 F.2d 615 (D.C.Cir.), cert. denied, 459 U.S. 927, 103 S.Ct. 239, 74 L.Ed.2d 189 (1982), the Court of Appeals for the District of Columbia Circuit correctly interpreted the Act as requiring payment of compensation to miner representatives on all inspections.
 
 
 9
 In 1977 Congress, primarily concerned about safety in the nation's mines, substantially revised legislation affecting miners. See 30 U.S.C. Sec. 801 et seq. As part of the overall plan, section 103 of the Act provides that the Secretary should make frequent inspections each year for the purpose of:
 
 
 10
 "(1) obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical impairments originating in such mines;
 
 
 11
 (2) gathering information with respect to mandatory health or safety standards;
 
 
 12
 (3) determining whether an imminent danger exists; and
 
 
 13
 (4) determining whether there is compliance with the mandatory health or safety standards."
 
 
 14
 30 U.S.C. Sec. 813(a).
 
 
 15
 For the purposes of carrying out (3) and (4), the Secretary's representative is to inspect each underground mine "in its entirety at least four times a year." The subsection goes on to say that the Secretary "shall develop guidelines for additional inspections ... based on criteria including ... hazards found in mines ... and his experience." Subsection (a) also provides that, for the purposes of making any inspection "under this chapter," the Secretary shall have the right of entry to the mine.
 
 
 16
 Subsection (f) gives a representative of the miners the opportunity to accompany the inspector "during the physical inspection of any coal or other mine made pursuant to the provisions of subsection (a)." Furthermore, the representative "shall suffer no loss of pay" for the time spent in the inspection. This compensation is generally referred to as "walkaround pay."
 
 
 17
 Subsection (i) requires the Secretary to conduct "spot" inspections at irregular intervals within a specified number of days when explosive gas hazards have been found to exist.
 
 
 18
 In an interpretative bulletin issued soon after the Act became effective, the Secretary took the position that in addition to the four "regular inspections," "spot inspections" were also included within the scope of subsections (a) and (f). 43 Fed.Reg. 17,548-49 (1978). Spot inspections are made to determine "if an imminent danger or a violation exists.... They are made for a variety of purposes, including electrical examinations, health examination, ventilation examinations, roof control examinations and other purposes.... The 'spot inspection,' unlike the 'regular inspection,' is an activity that ordinarily can be completed in a single day."[1] 43 Fed.Reg. 17,547 (1978).
 
 
 19
 Notwithstanding the expansive language of subsection 103(a), the company contends that only the four regular inspections are expressly required each year. Accordingly, the argument goes, compensation to the miner representative is mandated by subsection 103(f) only for a "regular inspection."
 
 
 20
 This same reasoning was rejected by the District of Columbia Court in United Mine Workers. 671 F.2d at 623-27. As that Court observed, although subsection 103(a) mandates only the "regular" inspection, it also directs the Secretary to develop "guidelines for additional inspections." Id. at 624. In addition to the subjects to be covered by the mandatory regular inspections, the Secretary is required to make frequent inspections to obtain information about "health and safety conditions," as well as "mandatory health or safety standards." Id. at 623.
 
 
 21
 We find ourselves in agreement with the District of Columbia Court--that spot inspections of the type challenged here are authorized by and made "pursuant to subsection 103(a)." Id. at 623-24. The narrow reading urged by the company is inconsistent with the declared intent of Congress to promote safety in the mines and encourage miner participation in that effort. See Magma Copper Company v. Secretary of Labor, 645 F.2d 694, 697 (9th Cir.1981).
 
 
 22
 The company also urges us to interpret subsection 103(f) in conformity with remarks of Congressman Perkins. The Congressional Record indicates that the comments were made on the House floor while the House-Senate Conference bill was being considered. See 123 Cong.Rec. 35409 (1977). He stated that the intent of the Committee was to require compensation for the miner representative only during the regular inspections. Id. at 35410. However, no such statement is found in the Conference Report; nor was Congressman Perkins' interpretation brought to the attention of the Senate which had already voted favorably on the bill emerging from the Conference Committee. United Mine Workers, 671 F.2d at 622.
 
 
 23
 We note further that the provision for walkaround pay originated in the Senate, and its version was adopted intact by the Conference Committee. S.Rep. No. 181, 95th Cong., 1st Sess. 26 (1977), U.S.Code Cong. & Admin.News 1977, p. 3401, reprinted in Subcomm. of Labor of the Senate Comm. on Human Resources, 95th Cong., 2d Sess., Legislative History of the Federal Mine Safety and Health Act of 1977, 589, 614 (Comm. Print 1978). For these reasons and others discussed at length in United Mine Workers, we reject the company's contention that Congressman Perkins' remarks carry controlling weight here.
 
 
 24
 Detailed discussion of other pertinent points is not necessary here because the issue was thoroughly canvassed in the majority and dissenting opinions in United Mine Workers. We find the opinion of the majority to be in accord with our own analysis of the statutory language.
 
 
 25
 We hold therefore that spot inspections are authorized by subsection 103(a) and that compensation for the miner representative in subsection 103(f) includes spot inspections made pursuant to subsection 103(a).[2]
 
 
 26
 We also find that, in fixing the amount of the penalty, the ALJ observed the six statutory criteria enumerated in subsection 110(i), 30 U.S.C. Sec. 820(i), and the penalty imposed on the company was proper. Accordingly we will deny the petition for review.
 
 
 
 *
 The Honorable John W. Oliver, United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The inspector designated the spot check in this case as a "CAA" spot inspection. None of the parties chose to enlighten us as to what a "CAA" inspection entails
 
 
 [2]
 The original Senate bill provided that pay was authorized during the "physical inspection of any mine under subsection (a)." The final version substituted "pursuant to" for the word "under." We find no significance to this substitution