

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-2003

# Secretary Labor v. Rothermel

Precedential or Non-Precedential: Precedential

Docket 02-2721

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Secretary Labor v. Rothermel" (2003). *2003 Decisions.* Paper 514.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/514

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 2, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2721

ELAINE L. CHAO, SECRETARY OF LABOR;
UNITED STATES DEPARTMENT OF LABOR

v.

RANDY ROTHERMEL, JR.;
CINDY ROTHERMEL;
D & F DEEP MINE COAL COMPANY
                    Randy Rothermel, Jr. and
                    Cindy Rothermel, individually
                    and d/b/a D&F Deep Mine
                    Coal Company,
                                   Appellants

APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 02-cv-00202)
District Judge: The Honorable James M. Munley

ARGUED January 22, 2003

Before: BECKER, *Chief Judge*, NYGAARD and AMBRO,
*Circuit Judges.*

(Filed: May 2, 2003)

James P. Wallbillich, Esq. (Argued)
Anthony S. Odorizzi, Esq.
Cerullo, Datte & Wallbillich
450 West Market Street
P.O. Box 450
Pottsville, PA 17901

*Counsel for Appellants*

Jack Powasnik, Esq. (Argued)
United States Department of Labor
Office of the Solicitor
1100 Wilson Boulevard
22nd Floor
Arlington, VA 22209

*Counsel for Appellees*

## OPINION OF THE COURT

NYGAARD, *Circuit Judge.*

### I.

Appellants Randy Rothermel, Jr. and Cindy Rothermel own and operate the D&F Deep Mine Coal Company, an anthracite coal mine in Schuylkill County, Pennsylvania. After Randy Rothermel prevented a Mine Safety and Health Administration (MSHA) inspector from conducting respirable dust sampling, the District Court issued a temporary restraining order and a preliminary injunction prohibiting Rothermel from interfering with the MSHA in carrying out the provisions of the Federal Mine Safety and Health Act of 1977 ("the Mine Act"), 30 U.S.C. § 801. Approximately two months later, Randy Rothermel again prevented a MSHA inspector from entering the mine. The MSHA issued a citation and an order, and the Secretary of Labor requested a preliminary injunction and a permanent injunction in the District Court for the Middle District of Pennsylvania. Appellants contend on appeal that the District Court erred by granting this permanent injunction enjoining Appellants from interfering with the Mine Act

inspection activities. We review questions of law *de novo.* *Patel v. Ashcroft*, 294 F.3d 465, 467 (3d Cir. 2002), and the District Court's grant of a permanent injunction under an abuse of discretion standard. *Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d 264, 267 (3d Cir. 2002). We will affirm.

## II.

Appellants' first contention, that the MSHA's conducting bi-monthly respirable dust samplings under the Guidelines is "unsupported by legal authority," is far from the truth. Section 103(a) gives the government ample authority. In *Consolidation Coal Co. v. Federal Mine Safety and Health Review Comm'n*, we explicitly interpreted § 103 of the Act, and specifically the "expansive language" of § 103(a). 740 F.2d 271, 272-73 (3d Cir. 1984).[1] We stated that,

> [a]s part of the overall plan, section 103 of the Act provides that the Secretary should make frequent inspections each year for the purpose of:
>
> '(1) obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical impairments originating in such mines:
>
> (2) gathering information with respect to mandatory health or safety standards;
>
> (3) determining whether an imminent danger exists; and

---

1. In *Consolidation Coal Co.*, a federal mine inspector conducted a spot inspection at a Consolidation Coal mine. A miner representative accompanied the inspector on his tour of the mine. After having learned that the company failed to pay the miner representative for the time spent on the inspection, another inspector from the Mine Administration issued a citation for a violation of § 103(f) of the Mine Act. The company contended that the Act's allowance of compensation to the miner representative applied to only "regular" and not to "spot" inspections. We held that the Court of Appeals for the District of Columbia Circuit correctly interpreted the Mine Act as requiring payment of compensation to miner representatives on all inspections.

(4) determining whether there is compliance with the mandatory health or safety standards.'

30 U.S.C. § 813(a).

*Id.* We further explained:

[A]lthough subsection 103(a) mandates only the 'regular' inspection, it also directs the Secretary to develop 'guidelines for additional inspections.' In addition to the subjects to be covered by the mandatory regular inspections, the Secretary is required to make frequent inspections to obtain information about 'health and safety conditions,' as well as 'mandatory health or safety standards.'

*Id.* at 273. We explicitly held in *Consolidation Coal* that "spot inspections of the type challenged here are authorized by and made 'pursuant to subsection 103(a).' The narrow reading urged by the company is inconsistent with the declared intent of Congress to promote safety in the mines and encourage miner participation in that effort." *Id.*

Here, we continue to read § 103(a) broadly, and conclude that this legislation provides the MSHA with significant authority to conduct bi-monthly respirable dust samplings.

Appellants next argue that § 202 only allows "mine operators" — not the MSHA — to conduct dust samplings. Appellants assert that the MSHA's authority is limited to inspections for "obtaining compliance" where a mine operator is no longer complying with the standards in the Mine Act and the regulations. Brief for Appellants at 7. We disagree.

Section 202(g) states: "The Secretary shall cause to be made such frequent spot inspections as he deems appropriate of the active workings of coal mines for the purpose of obtaining compliance with the provisions of [Title II]." 30 U.S.C. § 842(g). Appellants stress that the provision permits spot inspections for "obtaining" compliance; that is, the MSHA "may only conduct spot dust inspections to 'obtain' compliance, not systematic, periodic inspections to 'maintain' compliance." Brief for Appellants at 13.

According to this argument, since the mine never fell out of compliance, the MSHA would not have the authority to "obtain" compliance. This is semantic nonsense. Appellants' argument goes nowhere for several reasons. First, the language of § 202(g) contains no indications that it is meant to limit § 103(a). Second, Congress could not have intended to limit the MSHA to dust inspections only when an operator was "out of compliance" with the dust standards. If this were the case, the MSHA would be at the mercy of the mine operator's own dust sampling, without any independent means of verifying the mine operator's reporting. Granting the MSHA the means to test the accuracy of the mine operator's sampling is consistent with Congress's intent to eliminate miners' exposure to elevated respirable dust levels.

Appellants also argue that § 103(e) precludes these inspections because the MSHA cannot develop guidelines "duplicative" of those already provided. Brief for Appellants at 8. Section 103(e) states:

> Any information obtained by the Secretary . . . under this chapter shall be obtained in such a manner as not to impose an unreasonable burden upon operators, especially those operating small businesses . . . . Unnecessary duplication of effort in obtaining information shall be reduced to the maximum extent possible.

30 U.S.C. § 813(e). Specifically, the Appellants contend that the MSHA's interpretation that § 103(a) authorizes the agency to conduct respirable dust inspections duplicates the Appellants' own dust sampling activities. Brief for Appellants at 15. This assertion is meritless.

Appellants' own dust sampling gives only the operator's recording of the dust levels to which miners are exposed. The MSHA's inspections serve as a check against inaccurate or unreliable sampling by the mine operators. The MSHA's inspections also determine whether other areas need to be monitored by the operator. In addition, the MSHA's inspections have other purposes, including determining whether the operator is complying with the on-shift examination provisions of 30 C.F.R. § 75.362(a)(2),

whether the dust control measures actually in use differ from those stipulated in the approved plan, and whether miners are being exposed to excessive levels of respirable crystalline silica. Therefore, because the inspections carried out by the MSHA have different functions and purposes from Appellants' testing, they are not "unnecessarily duplicative."

Appellants next contend that the guidelines at issue in this case "are invalid because they were not properly promulgated by publication in The Federal Register." Brief for Appellants at 8. At the close of the preliminary injunction hearing, the District Court found the Guidelines did not require publication because they "do not alter or affect the existing respirable dust standards, and they do not place additional substantive burdens on mine operators to comply with those standards." Dist. Court. memorandum, p.6. The issue is therefore whether these Guidelines are exempt from the requirement of notice-and-comment rulemaking.

"Legislative" rules that impose new duties upon the regulated party have the force and effect of law and must be promulgated in accordance with the proper procedures under the Administrative Procedures Act (APA). *Beazer East, Inc. v. EPA*, 963 F.2d 603, 606 (3d Cir. 1992). The APA requires also that general notice of the proposed regulation be published in the Federal Register and interested persons be given an opportunity to comment on the proposed rule. *Id.* "Interpretive" rules, on the other hand, seek only to interpret language already in properly issued regulations. *Id.* If the agency is not adding or amending language to the regulation, the rules are interpretive. *Id.* Interpretive, or "procedural," rules do not themselves shift the rights or interests of the parties, although they may change the way in which the parties present themselves to the agency. *Chamber of Commerce of the United States v. U.S. Dep't of Labor*, 174 F.3d 206, 211 (D.C. Cir. 1999). Interpretive or procedural rules and statements of policy are exempted from the notice and comment requirement. 5 U.S.C. § 553(b)(A).

The Coal Mine Health Inspection Procedures Handbook sets forth inspection procedures developed by the MSHA

under § 103(a) of the Mine Act. Specifically, the Guidelines set forth procedures for the MSHA inspectors to follow in determining whether there is compliance with already existing mandatory health standards, such as dust concentration levels, drill dust controls, and ventilation plans. 30 C.F.R. §§ 70.100, 72.620, 75.362(a)(2). The Handbook Guidelines do not alter the existing health standards, and they do not place additional burdens on mine operators to comply with those standards.[2] Mine operators must comply with the Mine Act standards regardless of how the MSHA enforces them, or whether it performs respirable dust inspections. These Guidelines do not determine substantive rights, but merely outline a uniform plan for the MSHA inspectors around the country to effectively inspect mines.

If the Guidelines have a substantive adverse impact on the challenging party, they are "legislative." *FLRA v. U.S. Dep't of the Navy*, 966 F.2d 747, 763 (3d Cir. 1992). Here, however, there is no such impact on the Appellants. Under the Guidelines, mine operators are simply required to comply with the respirable dust standards. The only additional responsibility created by the Guidelines is for the mine operators to allow the MSHA inspectors into their mines for inspections. This responsibility does not produce a substantial impact on operators because the inspections are conducted during a normal operating shift so as not to interfere with Appellants' production activities.

In addition, the Guidelines are not intended to be used by anyone other than agency employees. In *Gatter v. Veteran's Administration*, one of the elements we used to determine whether guidelines were "interpretive" was whether they were intended to be used by anyone other than the agency employees. 672 F.2d 343, 347 (3d Cir. 1982) (holding agency's internal manuals to be non-substantive rules). Therefore, this weighs in favor of the Guidelines as "interpretive."

---

2. Appellants do not claim that the MSHA's dust inspections impose an unreasonable burden, and the undisputed evidence shows that they do not.

The Government argues that the fact that Congress used the word "guidelines" provides evidence that Congress did not intend to require notice-and-comment rulemaking. It is true that, by using the term "guidelines," Congress did not mandate notice-and-comment rulemaking, as we might have concluded it had done had it directed the Secretary to issue regulations or promulgate standards. But by using the word "guidelines," Congress does not necessarily indicate its intent to exempt the agency from notice-and-comment rulemaking requirements. In some instances, guidelines must be promulgated using notice-and-comment rulemaking; in other instances, notice-and-comment rulemaking is not required. Compare 13 U.S.C. §1344(b) (provision of Clean Water Act required Administrator to develop guidelines for permit issuance; resulting guidelines were published at 40 C.F.R. § 230.10(a)(2)) *with Better Gov't Ass'n v. Dept. of State*, 780 F.2d 86, 89 (D.C. Cir. 1986) (congressional subcommittee recommended that state develop guidelines for evaluating Freedom of Information Act waiver requests; guidelines were not promulgated using notice-and-comment rulemaking). It is not whether Congress uses the term "guidelines" that determines whether the agency must proceed through notice-and-comment rulemaking. Rather, as discussed previously in this opinion, it is whether the resulting guidelines constitute procedural or legislative rules.

Therefore, because the MSHA's respirable dust sampling policy is a rule of agency procedure which does not impose a new substantive burden on mine operators, and was not intended by Congress to comprise new standards or regulations, we hold that the Guidelines are interpretive rules, and thus exempt from the requirements of notice-and-comment rulemaking.

We reject Appellants' final attempt to prevent the MSHA inspectors from entering their mine by concluding that the MSHA satisfied the requirements for a permanent injunction. A court may issue a permanent injunction where the moving party has demonstrated that: (1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the "balance of equities" favors granting injunctive relief.

*Ciba-Geiby Corp. v. Bolar Pharmaceutical Co.*, 747 F.2d 844 (3d Cir. 1984). Appellants assert that the Government failed to establish the merits underlying its claim or to demonstrate that the equities favored the granting of an injunction. Appellants lose both of these arguments.

First, as explained above, the Government did show that it has actually succeeded on the merits of its claim. Second, Appellants' argument that the Government failed to demonstrate that the "balance of equities" favors granting injunctive relief is nothing but a confusing mosaic of irrelevant evidence. Appellants describe how the Government was "sounding-off about Mr. Rothermel's alleged prior history," Brief for Appellants at 24, and how previous district court proceedings were "never fully litigated" because "[t]he District Court merely issued a preliminary injunction against Defendants *pro se*" [sic]. Brief for Appellants at 25.

In fact, none of Appellants' arguments are germane to the issue of whether the "balance of equities" favors injunctive relief. Rather, the District Court was correct in finding that the balance of equities favored injunctive relief because not only does the MSHA's respirable dust inspections not interfere with Appellants' activities, but the danger resulting from Appellants' denial of entry to the MSHA inspectors could be significant. Appellants' denial of entry to the agency inspectors results in a drain on the agency's resources and, more importantly, elevated dust levels would present a danger to miners.

In sum, and for the foregoing reasons, we will affirm.

A True Copy:
      Teste:

                *Clerk of the United States Court of Appeals*
                      *for the Third Circuit*