**In re Jenny RIVERA, Debtor.**

**No. 01–42625 (MS).**

United States Bankruptcy Court,
D. New Jersey.

May 31, 2007.

Vincent F. Papalia, Esq., Saiber, Schlesinger, Satz & Goldstein, LLC, Newark, NJ, for EverHome Mortgage Company f/k/a Alliance Mortgage Corp.

Michael A. Artis, Esq., Robert Schneider, Esq., Office of the U.S. Trustee, Newark, NJ.

## OPINION

MORRIS STERN, Bankruptcy Judge.

This court is called upon to consider and enter as its order a draft form of Consent Order submitted by the Office of the United States Trustee and one particular respondent in a multi-respondent disciplinary proceeding initiated *sua sponte* in September 2005. *See In re Rivera,* 342 B.R. 435 (Bankr.D.N.J.2006). Following appeal, this aspect of the overall *Rivera* case was remanded to this court for further proceedings. The substantive issue of the propriety of the would-be Consent Order under the circumstances of this case, and the route by which this aspect of the case returned to this court, impel the following opinion.

### Background.

Respondent, EverHome Mortgage Company (formerly Alliance Mortgage Corp.), appealed this court's order of May 25, 2006 wherein EverHome was enjoined from a certain practice and, further, from violating rules and orders, in seeking relief from stays suspending mortgage foreclosure processing. That practice, fully described and detailed by the court, involved "using a presigned certifying paragraph, and . . . not having the signatory to the supporting certification both review the full and final form of certification and execute that certification contemporaneously with that review, all prior to the filing of such certification with the Court." *Id.* at 467. The

practice violated a number of Local Rules, Administrative Orders and General Orders of this District,[1] and hence the injunction required EverHome's compliance in future stay relief application processing.

It was made abundantly clear to the court that the rogue practice of using "on-file" signature pages was being engaged in for many years by a New Jersey law firm which was part of a large national network of firms processing paper on behalf of mortgagees, who generally outsourced foreclosure and bankruptcy matters to default servicing companies.

While particular attorneys were determined to have acted in bad faith, and one attorney and the firm were found to have violated *Fed. R. Bankr.P.* 9011 (resulting in monetary sanctions), EverHome was *not* subjected to any monetary sanction. The mortgage company was the "client" and thus met the threshold of jeopardy under Rule 9011. However, its lesser involvement in the most clearly documented cases of law firm violations and its protestation of reliance on the firm (without knowledge of the firm's practice) and the default service company, served both to limit EverHome's sanction and to put in question the precise applicability of Rule 9011 to it. "Application of this court's injunction to EverHome [without monetary sanctions] should provide sufficient notice—indeed, warning—that future involvement in such practices will not be tolerated." 342 B.R. at 466.

1. In this district *certifications are required* in support of both motions for relief from stay and *"ex parte"* applications for relief following entry of a cure order. D.N.J. LBR 4001–1 which supplements *Fed. R. Bankr.P.* 4001 with respect to applications for relief from the automatic stay provides in relevant part:

> In addition to the requirements of **D.N.J. LBR 9013–1** through **D.N.J. LBR 9013–3**, every motion for relief from the automatic *stay shall be accompanied by a certification or affidavit* and supporting exhibits which shall contain the following: . . . .

D.N.J. LBR 4001–1(c) (italics added, bold emphasis in original). D.N.J. LBR 4001–1(c)(3) then provides:

> In chapter 13 cases in which the relief sought is based upon a mortgagee's claim that the debtor has failed to make all post-petition payments due under the terms of the mortgage in issue, the movant shall attach to its *certification* in support of its notice of motion **Local Form No. 16** ("Post-Petition Payment History").

(Italics added, bold emphasis in original.) Specifically, as to non-motion based applications, the starting point is the cure order. *See* the local recommended form of order entitled *Order Resolving Motion to Vacate Stay and/or Motion to Dismiss with Conditions,* enabling the creditor to enforce this Order by certification of default without a hearing (unless there be an objection). The local form order (¶ 4) provides:

> If the Debtor fails to make the immediate payment specified above or fails to make any regular monthly payment or the additional monthly cure payment within thirty (30) days of the date the payments are due, then the Secured Creditor may obtain an Order Vacating the Automatic Stay as to the Collateral by filing, with the Bankruptcy Court, a *Certification* specifying the Debtor's failure to comply with this Order.

(Emphasis added.) (*See* public website, United States Bankruptcy Court, District of New Jersey, *www.njb.uscourts.gov,* "Forms," "Recommended Forms and Orders," *Order Resolving Motion to Vacate Stay and/or Motion to Dismiss with Conditions.*)

The local recommended form of certification entitled *Creditor's Certification of Default* is thus premised upon a prior cure order (¶ 2). The instructions to *Creditor's Certification of Default* state in relevant part:

> The Certification shall be completed and signed by an employee of the creditor who has *personal knowledge of the facts contained therein.* A copy of the Order providing for the curing of post-petition arrearages must be attached to the Certification. . . .

(Emphasis added.) (*See* public website, United States Bankruptcy Court, District of New Jersey, *www.njb.uscourts.gov,* "Forms," "Recommended Forms and Orders," for both *Creditor's Certification of Default* and the instructions for using it.)

In extending the injunction to the chain of commercial enterprises involved in the immediate stay relief application, this court opined as follows:

> Apparently, high volume production-oriented law firms, their clients (e.g., EverHome), and intermediaries ... need reminding of the solemnity of the undertaking to declare facts to be "true and correct." Given the disclosures made in this case, the court will exercise its inherent powers and extend the injunction, as a final order, to all respondents.

342 B.R. at 468. Authority for the injunction was derived from the inherent court powers as described in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'") (Internal citations omitted.) Moreover, *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1224–25 (3d Cir. 1995), acknowledged that these inherent powers are extended to bankruptcy court sanctioning authority. Thus, the bankruptcy court may, as is necessary and within responsible limits, exercise its discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45, 111 S.Ct. 2123. This would be the case, both where Rule 9011 cannot be applied or, as here, where its applicability to EverHome is not clear.

Additional bankruptcy court authority to issue the subject injunction was based upon 11 U.S.C. § 105(a), empowering this court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." And, EverHome *in particular* was cited as having "seemed to be satisfied to leave it to the hired-on back office operator [the default servicer] to deal with 'the details'" of stay relief applications.[2] 342 B.R. at 467 n. 35.

In ultimate terms this court issued the following broadly applicable warning (backed by the subject injunction as to immediate parties):

> Mortgage-secured parties, their servicers and subservicers, and attorneys, are admonished that in this district stay relief applications to advance foreclosures (and particularly residential real estate foreclosures) must comply with

---

**2.** It was not established that EverHome had been a significant client of the sanctioned New Jersey law firm over the years of that firm's misconduct. It was the client in this case and one other among some 250 or so cases where the named certification signatory was no longer associated with the default service company responding *sub judice* at the time the bogus certifications were supposedly executed. Extended hearings and fact-finding would be required to review the thousands of stay relief applications and motions involving bogus certifications filed by the responding law firm over more than five years to isolate EverHome's involvement in this broad class of cases. In any event, EverHome is a substantial mortgage company. The record reflects that EverHome services approximately 270,000 loans with cumulative principal balances of over $33 billion for over 800 private investors and government agencies. Docket Entry 45 ¶ 14. It specifically authorized only certain of the default service company officers to execute documents on its behalf—authorization limits which were plainly breached by its agent. *Id.* at ¶¶ 17–20. And, when all the *Rivera* accounting dust settled, EverHome's records upon which stay relief was sought, turned out to be *inaccurate*. 342 B.R. at 461. EverHome, as the client in *Rivera* and as a force in the marketplace, was and remains well positioned to monitor and correct shoddy, time-pressure-driven practices which corrupt mortgage foreclosure and bankruptcy processes.

local rules. Nothing less than such compliance, diligent inquiry and accurate accounting will be accepted. Future lapses in process will be dealt with accordingly.

342 B.R. at 468. In this regard, the EverHome nonmonetary sanction was calculated to "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by *others similarly situated.*" Fed. R. Bankr.P. 9011(c)(2) (emphasis added). *Rivera* had become the specific case of misconduct through which a much more extensive court administrative problem had surfaced.[3] The breadth of involvement in, and long duration of, the use of nonauthentic stay relief documentation in this district would appear to be unprecedented.

EverHome did not seek a rehearing; rather, it filed its Notice of Appeal on June 5, 2006.

### The Appeal Process.

On appeal, EverHome and the Office of the United States Trustee entered into a short-form stipulation, including the following provisions:

1. Any and all injunctions against EverHome contained in the bankruptcy court's order dated May 25, 2006, shall be vacated.

2. The issue of whether an injunction against EverHome is appropriate based on the record below shall be remanded to the bankruptcy court for further proceedings in light of this stipulation.

(D.Ct. Docket Entry 10, 1/16/2007.) No law or rationale was set forth in the stipulation which was submitted to the District Court as a joint-party application for entry of an order.

No further explanation (written or oral) was provided to the District Court which, being presented with a stipulation of the purported "parties," entered the order applied for in the stipulation, vacated the EverHome injunction and remanded this aspect of the case "for further proceedings." (D.Ct. Docket Entry 11, 1/29/2007.)

### Hearings on Remand.

This court held a status and scheduling conference on February 9, 2007. At outset, the representative of the United States Trustee announced that office's position regarding the EverHome sanction. The injunction was said to be without legal justification because the "National Office" of the United States Trustee had a policy requiring a court finding of "bad faith" before the court's inherent powers could be utilized to sanction; moreover, the proofs under 11 U.S.C. § 105(a) to establish the injunctive sanction were said to be not adequate (and, more specifically, it was alleged that the proofs did not meet standards set by the Third Circuit). No case law was cited for the bad faith prerequisite to sanctioning; *Chao v. Rothermel,* 327 F.3d 223 (3d Cir.2003), was said to be precedent for the purported proof deficiency regarding the injunction. (In passing, the United States Trustee representative explained that there was no proof or finding of EverHome's propensity again to engage in the violative practice or operate contrary to rules and orders.)

This court was surprised by the United States Trustee's position, thought, if anything, these issues were for appeal, but felt duty bound to schedule and program the "further proceedings" required by the remand order. To that end, the court out-

---

**3.** Many different mortgage-secured parties had their stay relief and foreclosure applications advanced in this district over the years through the use of bogus certifications. *See, e.g., Rivera,* 342 B.R. at 443 n. 9.

lined areas for potential inquiry,[4] discovery, and future hearings. The remand was plainly going to involve protracted litigation, abrading the summary nature of disciplinary proceedings with "satellite litigation." *See Chambers*, 501 U.S. at 51, 111 S.Ct. 2123. As a less costly and time-consuming alternative, the court suggested that a draft consent order might be developed by the United States Trustee and EverHome which, if approved by the court, would accomplish the ends intended by the court in issuing the injunction.[5]

At the conclusion of the February 9, 2007 conference, a second conference was scheduled, at which time discovery and hearing dates were to be scheduled if a workable alternative agreement could not be reached. That conference was held on March 9, 2007.

Between the February 9 and the March 9 hearings, the court had an opportunity to consider the record of this case and the position taken on appeal and on February 9 by the United States Trustee and Ever-Home. The court expressed its views on March 9 as to matters of substance (i.e., use of inherent powers and injunctive remedy) *and* the role of the United States Trustee before this court and on appeal. Court alternatives were vetted: engage in the extended hearing process, reapply the injunction with an expanded court explanation of its rationale, or entertain a form of order to accomplish the goal of the injunction, drafted by the United States Trustee and EverHome. Those substantive and process points are expanded upon hereinafter.

### The Purported Bad Faith Requirement.

*Chambers* was a monetary sanction case in which the American Rule (each party to litigation to bear its own legal fees) was reversed in light of bad faith behavior in the course of litigation. Justice Scalia was quick to point out that the Court's majority reference to bad faith is to be read in that context, "[b]ut that in no way means that *all* sanctions imposed under the courts' inherent authority require a finding of bad faith. *They do not.*" 501 U.S. at 59, 111 S.Ct. 2123 (Scalia, J. dissent; emphasis added).

The Third Circuit has acknowledged Justice Scalia's point in *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n. 11 (3d Cir.1994). "[A] court need not always find bad faith before sanctioning under its inherent powers." *Ibid.* This point can be fairly described as *dicta*, and the use of the inherent powers in non-bad-faith circumstances as unusual or atypical. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 181 (3d Cir.2002) (note, in particular, footnote 4, while *reiterating* the *Republic of Philippines* point, nonetheless referencing the cautionary note of *Martin v.*

---

**4.** For example, this court indicated its interest in the number of EverHome stay relief applications processed by the offending law firm since the year 2000 (given the fact that ninety-five percent of that firm's filings involved bogus certifications). Similarly, this court would inquire into instances—as is the case *sub judice*—where EverHome's reporting of arrears to bankruptcy courts in this District proved to be *inaccurate*. As to such inaccuracies, the court would inquire into any review process and corrective measures taken by EverHome. The court would inquire into Ever-Home's monitoring—if any—for abuses of its grant of signatory authority to contract parties—as was the case here. Other areas of inquiry, all extending fact-finding and/or hearings, were discussed on the record. Docket Entry 191 (Tr. 2/9/07) at 24–28.

**5.** The United States Trustee, seemingly with EverHome counsel's accord, expressed the view that the *sanction* was in and of itself a marketplace problem for the mortgagee company; as a servicer it would have to report the sanction, presumably to agency customers, thereby risking loss of service business.

*Brown,* 63 F.3d 1252, 1265 (3d Cir.1995)). Lower courts in this circuit have acknowledged the potential use of the inherent powers in non-bad-faith situations. *See Mruz v. Caring, Inc.,* 107 F.Supp.2d 596, 601 (D.N.J.2000), *rev'd o.g.* 166 F.Supp.2d 61 (D.N.J.2001) (finding revocation of *pro hac vice* admission based upon conduct out of the court's presence to be unwarranted); *Prosser v. Prosser,* 40 F.Supp.2d 663, 670–71 (D.Vi.1998), *rev'd o.g.* 186 F.3d 403 (3d Cir.1999) (delay in imposing monetary sanction served as basis for reversal, and notice of use of inherent power to fine was found to be inadequate). Courts in other circuits have likewise acknowledged that general proposition, though the law is nuanced and by no means uniform. *See, e.g., United States v. Seltzer,* 227 F.3d 36, 39–42 (2d Cir.2000); *compare First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 519–21 (6th Cir.2002).

It is clear that the inherent powers to impose sanctions must be employed with care. *Chambers* requires this. 501 U.S. at 44, 111 S.Ct. 2123. *Fellheimer, Eichen, Braverman* (57 F.3d at 1224) and *Republic of Philippines* (43 F.3d at 74) reiterate the requirement. In the case at bar, it was this court's judgment that EverHome should be subjected to a prospective directive—without monetary sanction, dismissal of its stay relief application, or other general punitive impact on its position as a mortgage holder in the pending *Rivera* case. That admonishing directive enjoined EverHome from advancing its bankruptcy stay relief position in this district through deceptive documentation (as well as through other violation of local rules and orders). It was and remains this court's position that this relatively narrow

spectrum "sanction" was fitting,[6] given (i) EverHome's commercial status and position here as the "client," and (ii) its ability and responsibility to monitor those agents it retains and works with on a regular basis. *See generally* footnote 2 *supra.* More specifically, this is a case through which an *industry practice* (effectuated by the untoward conduct of attorneys) was disclosed. The case was thus distinctly different from the typical case of *sua sponte* discipline. To protect the administrative integrity of day-to-day court stay relief processing, engaging in the practice was enjoined. EverHome, as the only party-mortgage company immediately before this court in a "case," was thus duly admonished and enjoined.

The bases for applying the injunction to EverHome (repeating and gathering here certain points made earlier) include the following findings and concerns:

Clear evidence was developed that not only EverHome, but many other similarly situated mortgage companies had their stay relief applications advanced—over a protracted period—through the filing of bogus form certifications;

Evidence supports a finding that industry standards were a function of *speed* with which stay relief applications and motions could be processed, strongly implying to this court that diligent inquiry and rule compliance were subordinated concerns, and contemporaneous factual review and execution of certified statements would be (and here were) outright sacrificed;

At least one other case involved the use of a bogus form certification to advance *EverHome's* stay relief application to

---

**6.** This court interprets *Chambers* to include caution as to both the application and the extent of sanctions, in the latter regard analogous to the Rule 9011(c)(2) limitation "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Sub judice* the nonmonetary sanction by way of directive could hardly be less severe, and, indeed, was applied with Rule 9011(c)(2) limitations as a strict guide.

this court (out of the small pool of the 251 cases most closely scrutinized, leaving open EverHome's exposure in the *thousands of cases* that were not reviewed in detail);

It was undisputed that EverHome had authorized *only* certain agent-default service company officers to sign certifications on its behalf, a contracted-for limitation breached with impunity by the servicer over a period of years, apparently without EverHome complaint or surveillance;

EverHome's accounting records for the *Rivera* loan were found to be *inaccurate;*

Stay relief applications and motions, a substantive area central to the administration of the bankruptcy court, was infected by attorney *bad faith* through a longstanding practice of filing mock certified documents, now a well-disclosed rogue practice which is best eliminated by client (e.g., EverHome) surveillance and direction; and

Absent diligent and contemporaneous inquiry and the "think twice before signing" requirements of this district's local rules and orders, this court is concerned that serious mortgage payment accounting errors will multiply.[7]

EverHome was free to challenge this court's use of inherent powers in the facts and circumstances of this case. The appeal would have brought the issue to the fore for review against the law emanating from *Chambers.* However, such review was inexplicably interdicted by "agreement" of EverHome and the United States Trustee. Neither any of the Third Circuit inherent powers precedent referenced above *nor any other case law* was cited by the United States Trustee and EverHome when the stipulation was submitted on appeal to the District Court. Nor was there any reference to the fact that the United States Trustee was on appeal implementing its National Office policy that the inherent powers of the court should be more restricted than reflected in Third Circuit (and other circuit) precedent.[8]

### The Chao Case and the Injunctive Sanction.

*Chao,* commended to this court for the first time on February 9, 2007 by the United States Trustee, is not antithetical to the injunction applied to EverHome. In that case, permanent injunctive relief was granted to the United States in furtherance of mine safety and health regulation. The standard for enjoining the defendants from preventing mine inspections included a balancing of equities.[9] *Chao,* of course, differs from the matter at bar in that it is

7. Current turmoil in the subprime mortgage industry should only accentuate the need for accounting integrity and bookkeeping accuracy by mortgage servicers. Given the volume and complexity of computerized mortgage payment accounting, errors are inevitable (and their prompt remediation mandatory). Though not present in this case, the potential for more egregious conduct than occasional bookkeeping errors—that is, outright fraud and theft of portions of hundreds of thousands of monthly mortgage payments—must be considered *immediately* by regulators and a broad range of government officials.

8. At the March 9 hearing, the United States Trustee's representative cast the National Office position as an "interpretation" of case law rather than denominating it as "policy," particularly because no Office memorandum or other writing could be identified as the source of this official point of view.

9. A court may issue a permanent injunction where the moving party has demonstrated that: (1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the "balance of equities" favors granting injunctive relief.

not a court sanction case nor one arising *sua sponte* in the context of litigation and day-to-day court administration. In fact, *Chambers,* Bankruptcy Code § 105(a),[10] and Rule 9011 remain the touchstones for court power to sanction and the nature of such sanctions.

Consistent with *Chambers,* this court may "fashion an appropriate sanction for conduct which abuses the judicial process," 501 U.S. at 44–45, 111 S.Ct. 2123, and 11 U.S.C. § 105(a) likewise supports *sua sponte* implementing orders.[11] Rule 9011, by way of strong analogy, would have sanctions, calculated and limited, but nonetheless "sufficient." Among the sanctions plainly contemplated by Rule 9011(c)(2) are "*directives of a nonmonetary nature*" (emphasis added). *Chao* is a different case and hardly relevant to the matter at bar.

### The Prior Position of the United States Trustee Advanced to This Court.

Neither the proposition that a finding in this case of bad faith is *not* a prerequisite to nonmonetary sanctions, nor the application of an injunctive sanction to Ever-Home, should be surprising to the Office of the United States Trustee. *That Office advocated that precise proposition and the injunctive remedy to this court in this case on February 21, 2006.* See Docket Entry 101, "Statement of the United States Trustee Regarding the Issues

Raised In This Court's Order to Show Cause."

In addition to Rule 9011, this Court can sanction parties appearing before it pursuant to its "*inherent* authority to impose sanctions upon those who would abuse the judicial process." *See Republic of the Philippenes [sic] v. Westinghouse Electric Corp.,* 43 F.3d 65, 73 (3d Cir.1995) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44[, 111 S.Ct. 2123, 115 L.Ed.2d 27] (1991) (emphasis in original)). Whereas in most cases a finding of bad faith is a prerequisite before imposing a Court's inherent powers, the Third Circuit has noted that "a court need not always find bad faith before sanctioning under its inherent powers." *See Republic of the Philippenes [sic] v. Westinghouse Electric Corp.,* 43 F.3d at 74 n. 11.

Docket Entry 101 at 13.

As for the appropriate sanction in the instant case, this Court should be guided by Rule 9011(c)'s requirement that a sanction be "appropriate" and "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Sanctions under Rule 9011 may be monetary or nonmonetary. Sanctions imposed under this Court's inherent power should also be guided by the same considerations that guide sanctions under Rule 9011. *See Republic of the Philippenes [sic] v.*

327 F.3d at 228.

10. The Bankruptcy Code context of the *Rivera* controversy is an application for stay relief under 11 U.S.C. § 362(d). In earlier *Rivera* motion practice, a Cure Order had been entered (the June 1, 2004 order, 342 B.R. at 442), which *required* a Certification of Non–Receipt of Payment in the event of a future default and stay relief application. That order was violated by the filing of the bogus document *sub judice,* as were Administrative Orders and General Orders of this court, and ultimately § 362(d) processes were corrupted.

*See* footnote 1 *supra.* The injunctive sanction was issued by this court as a "necessary" and "appropriate" § 105(a) measure to carry out, among other primary court administrative essentials, the provisions of § 362(d) and those orders and rules which would implement it.

11. No provision of this title ... shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
11 U.S.C. § 105(a).

*Westinghouse Electric Corp.*, 43 F.3d at 74.

Docket Entry 101 at 15.

Indeed, the United States Trustee advocated a monetary sanction, apparently even for EverHome (Docket Entry 101 at 15–16), and capped its overall recommendation for sanctions as follows:

> Potential nonmonetary sanctions run the gamut, from this Court simply reprimanding those involved and *enjoining future filings using pre-signed signature pages* to a period of disbarment from appearing before the Bankruptcy Court for this District. Given the seriousness and sheer volume of bogus documents filed, a mere reprimand would not be sufficient. This Court must impose a sanction that will stick. *Of course, a permanent injunction against using pre-signed signature pages is a given in this case.*

Docket Entry 101 at 16 (emphasis added). No reference was made at that time by the United States Trustee to *Chao* or any other precedent which would be contrary to the permanent injunction sanction. Nor was EverHome excluded from the sweep of the United States Trustee's recommended injunctive sanction.

The permanent injunction—"*a given in this case* "—was nonetheless vacated based upon a cryptic stipulation of the purported parties-in-interest following the United States Trustee's reversal of *its own posi-*

---

**12.** The District Court, presented with the accomplished fact of a stipulation of "the parties," and not being apprised of the United States Trustee's advocacy of its own view of the law in a *sua sponte* sanction case centering on inherent court powers, understandably acceded to the "uncontested" remand request.

**13.** A workable alternative to the United States Trustee's *sub silentio* approach would involve full disclosure to the District Court of this difference in view of inherent court powers,

*tion* taken below. Moreover, that turnabout served to withhold the merits of the appeal from the District Court in favor of the United States Trustee's National Office policy. In effect, the United States Trustee *decided* that this court's position should not see the light of day on appeal— but did not disclose to the District Court its change of position on appeal nor that its National Office policy might be at odds with Third Circuit pronouncements.[12] This lack of candor masked a serious potential conflict[13] between the Executive and the Courts.

### Use of Inherent Powers In Conjunction with Rule 9011 and 11 U.S.C. § 105(a).

In finding that Rule 9011 was violated by the filing attorney and law firm, this court had no need to go beyond the text of the Rule. It completely covered their misconduct and sanctions. 342 B.R. at 457–64. (In fact, bad faith—though found by this court—was not a *necessary* finding for Rule 9011 violation. 342 B.R. at 460–61.)

Other respondents in the chain of responsibility, ranging from the mortgage company-client (i.e., EverHome), through the default servicing company, the New Jersey law firm's equity owners and their Illinois law firm, and the manager of the New Jersey firm, were less clearly covered by the precise text of Rule 9011. EverHome, though the client, was not a direct signatory to the violative filing in this court and dealt through the outsource hi-

generating the appointment of special counsel on appeal, with the United States Trustee stepping aside (and left to advance its own agenda in other cases). *Cf. Matter of Duane, Morris & Heckscher, LLP*, 315 N.J.Super. 304, 311 n. 5, 718 A.2d 244 (App.Div.1998); *N.J. Court Rules 1:10–1 and 2(c)* (allowing, for good cause, court designation of an attorney other than the Attorney General or County Prosecutor to prosecute certain contempt actions); *see generally L. Civ. R. 83.3.*

ree (the default servicer, whose employee allegedly signed the certification at immediate issue); the default servicer was not precisely the client in Rule terms; others in the chain had not signed papers or filed them with this court. Rule 9011, simply stated, was not necessarily a precise "fit." Yet, this court could not ignore an apparent systemwide breakdown and a full-fledged failure of participants, even non-bad-faith participants, to meet their responsibilities. As to EverHome, the record (as reiterated earlier) established in this court's view the need to apply the subject injunction. Mortgage companies—even large and busy enterprises like Ever-Home—cannot contract their way out of their fundamental responsibility for accurate accounting and compliance with law.[14] Hence, this court relied upon the general authorizing provision of the Bankruptcy Code (§ 105(a)), and the inherent powers *as reflected in Chambers. See, generally, Marrama v. Citizens Bank of Mass.,* —— U.S. ——, ——, 127 S.Ct. 1105, 1112, 166 L.Ed.2d 956 (2007).

Indeed, the application of sanctions for conduct discernible in a particular case but reflecting a long-term commercial community breakdown in stay relief processing integrity was that unusual or atypical circumstance calling for use of the inherent

powers even as to parties whose bad faith was not established. Rule and statutory mechanisms were, in this situation, at least problematic [15] in addressing the range of commercial participants and the various contributing roles each played in enabling the perpetration of a longstanding hoax.

*Chambers* recognized that sanctioning through statutory and rule-made structures would leave gaps in application in particular cases. "These other mechanisms [statutory and rule-made sanction schemes], taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions.... [W]hereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. *At the very least, the inherent power must continue to exist to fill in the interstices."* 501 U.S. at 46, 111 S.Ct. 2123 (emphasis added). And, as to EverHome, there were "interstices" in the application of Rule 9011.

■ The nonmonetary sanction was imposed on EverHome and deemed sufficient, *without the need for extended hearings.* The facts developed in the *Rivera* record were clear (and basically undisput-

14. Mortgagees are *responsible* to take care in their accounting for receipts and accurately report mortgage balances; the certification requirement for stay relief in this District is relied upon by this court, and therefore a responsible representative of the mortgagee (whether a named employee or an authorized representative of an agent-service company) *"should 'think twice' about signing on if there is any question of data accuracy or the diligence of the inquiry process." Rivera,* 342 B.R. at 463 (emphasis in original). "Certifications supporting stay relief applications should be reviewed and executed contemporaneously; as indicated throughout this opinion, the signatory should be a *responsible party* (i.e., one with access to data and records who is assigned the task of verifying same by

the secured party-client). That responsible party must understand the significance of his/her signature." *Id.* at 467 (emphasis in original).

15. As noted earlier, Rule 9011 is limited (implicating most clearly attorneys and parties directly "presenting to the court" written material); moreover, the reach of § 105(a) to a history of conduct transcending the immediate case or controversy is substantially uncharted. Cf. *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439 (1st Cir.2000), *cert. denied sub nom., Textron Funding Corp. v. Bessette,* 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001).

ed). *Sua sponte* disciplinary hearings are traditionally summary in nature and should reflect prompt and decisive action. They are ancillary to main cases and dockets, and should not be protracted. Similarly, parsing of discrete sanctionable conduct into Rule or statute-based offenses prior to relying on the inherent powers to address noncovered offenses "would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Chambers,* 501 U.S. at 51, 111 S.Ct. 2123. "And I agree with the Court that an overall sanction resting at least in substantial portion upon the court's inherent power need not be broken down into its component parts, with the actions sustainable under the Rules separately computed. I do not read the Rules at issue here to require that, and it is unreasonable to import such needless complication by implication." 501 U.S. at 60, 111 S.Ct. 2123 (Scalia, J., dissent). Now, however, the stipulating interests have initiated "further proceedings." This court remains concerned that extended proceedings will be that "extensive and satellite litigation" *Chambers* sought to avoid, engendering the "needless complication" Justice Scalia warned against. This court either had the inherent power to apply a circumscribed sanction to the mortgage company (i.e., to admonish Ever-Home and enjoin its future violative conduct), or this court went beyond its authority. Extended hearings and development of facts concerning industry wide practices would, if entertained, involve more of an investigative function than a role for the judiciary.

### The Proposed Consent Order.

To their credit, after the March 9 hearing, EverHome and the United States Trustee developed a form of Consent Order which both accomplishes the goals of the earlier injunction *and* goes much fur-

ther in detailing programmed diligence in the mortgage default servicing process. The court appreciates those efforts, and acknowledges that EverHome had previously and continues to implement improved procedures for its servicing.

The form of Consent Order placed before the court for consideration provides (at ¶ 1) the following fundamentals:

1. EverHome shall not engage in, and EverHome shall direct its employees, its default services agent (currently Fidelity), and its in-house and outside counsel, not to engage in the S & D Certification Practice. To that end, EverHome has adopted and shall maintain policies and procedures: (i) prohibiting the execution of signature pages on legal documents relating to Motions for Relief From Stay or similar applications (the "Lift Stay Certifications") in blank or in bulk; (ii) requiring that Lift Stay Certifications be reviewed by the proposed authorized signatory contemporaneously with their execution; and (iii) requiring that all pertinent amounts due and payment information and loan documents be simultaneously provided to the proposed signatory for review.

Detailed procedures are then addressed for (i) the initiation of the stay relief process in bankruptcy (¶ 2), (ii) review and confirmation of the accuracy of information included in stay relief applications, as well as the execution of final form documents by an authorized representative (¶ 3), (iii) quality control review sampling on a periodic basis (¶ 4), (iv) inclusion of its default services processes in its annual internal audit (¶ 5), (v) provision for immediate review of "non-routine issues" by management (¶ 6), (vi) input from employees and agents for ongoing process improvement

(¶ 7), and (vii) specific provision for handling of partial payments by debtors (¶ 8).

Understanding that processing must be adapted as circumstances change, the Order provides:

11. The policies and procedures described herein are subject to ongoing review and modification to more effectively address issues that may arise and changing circumstances in the default services process. Such modifications consistent with bankruptcy law, applicable rules (both federal and local), and court orders, may be made in the reasonable business judgment of EverHome, based on information obtained from its internal staff and/or default servicer(s) and agent(s), from time to time, as EverHome deems necessary or appropriate to effectuate the intent and further the purposes of this Order.

12. The Court has continuing jurisdiction to enforce and modify this Order as necessary to assure compliance with bankruptcy law, applicable rules (both federal and local), and court orders.

### Conclusion.

■ The proposed Consent Order satisfies this court, thus obviating the "extensive and needless satellite" hearings of concern in *Chambers*. The Order will be entered, rendering moot those differences which EverHome had with this court's original Order. Likewise, the immediate issues of this court's inherent powers and use of the nonmonetary injunctive sanction remain unreviewed. These *substantive points* will abide the event of other cases for more in-depth review and reflection.[16]

Requiring *current* attention and critical introspection, however, is the *appeal processing* undertaken by the United States Trustee in this case. "Settling" a case could well be based upon a tactical decision. Indeed, this court does not discount the Office of the United States Trustee's possible strategic concerns that the Ever-Home appeal—being considered controversial as to the bad faith/inherent powers question—might somehow impact on the two other pending *Rivera* appeals (by the sanctioned attorney and law firm) where the Office appears to be vigorously supporting this Court's Rule 9011–based decisions. Nonetheless, where the Office is placed in a position of conflict with court determinations in *sua sponte* disciplinary matters, the United States Trustee should be sensitive to the requirements of candor toward tribunals. It cannot, even with the best of intentions, quietly "stipulate" in accordance with its own preferred view of the law and contrary to court positions with which the Executive disagrees.[17]

---

16. Ms. Rivera's status in bankruptcy should not be ignored, notwithstanding the expansion of case issues far beyond her immediate circumstances. In fact, she has successfully completed her Chapter 13 plan program, has paid off the mortgage which was at issue here (accomplished through refinancing), the trustee's final report accounting for the required plan distributions has been filed, and, in the ordinary course, Ms. Rivera should receive her bankruptcy discharge.

17. This would be the case even if the United States Trustee had not, *sub judice*, so completely reversed its position on appeal based upon National Office policy. That turnabout further evidences both lack of disclosure to the District Court and the Office's misconcep-

In re

tion of its role in *sua sponte* disciplinary mat-     ters.